UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 00-0016 (TFH) |
| | ) | |
| MICHAEL D. THOMPSON. | ) | |
| _____ | ) | |

MEMORANDUM OPINION

This matter is before the Court on consideration of Defendant's motion pursuant to 28

U.S.C. § 2255 to vacate, set aside or sentence and request for a hearing.  In this motion,

Defendant raises ineffective assistance of counsel claims against both trial counsel, Godwin

Oyewole, Esq., and appellate counsel, Adam H. Kurland, Esq.  For the reasons set forth

below, the motion will be denied without a hearing.

## I.  BACKGROUND

The United States Court of Appeals for the District of Columbia Circuit summarizes

the underlying facts of this case as follows:

> On October 22, 1997[,] Detective David Dessin of the Metropolitan
> Police Department (MPD) and a confidential informant (Robert) approached
> Mitchell Douglas (Douglas) to buy cocaine base.  Dessin was working as an
> undercover agent for the High Intensity Drug-Trafficking Area Task Force, a
> joint task force of the MPD and the United States Bureau of Alcohol, Tobacco
> and Firearms.  Douglas agreed to sell but told Dessin that he would complete the
> transaction – $1500 for 62 grams of cocaine base – the next day at 5:00 p.m. in
> a nearby Popeye's Chicken parking lot.
> On October 23, 1997[,] Dessin waited in an unmarked police car, a Lexus,
> in the restaurant parking lot.  Shortly after Dessin arrived, Robert drove into the
> parking lot and parked next to Dessin.  Dessin did not expect to see him because
> Robert had earlier told him that he could not participate in the bust.  Dessin told

him to get into the Lexus so that the targets would not become suspicious of his separate arrival.

At approximately 5:10 p.m., an unknown person later identified as [Defendant] approached Dessin and asked, "Are you Rob's boy?" Dessin responded, "Yeah." [Defendant] then stated, "Mitch told me to give you this." Dessin told [Defendant] to get into the car. [Defendant] opened the driver's side rear door and sat behind Dessin. Dessin asked him, "Do you have that joint?" [Defendant] responded by handing him a large Burger King cup with a lid on it. The cup was later shown to have contained cocaine base. Dessin then gave [Defendant] a bundle of money in exchange. [Defendant] asked, "What's this?" Dessin responded, "15" (meaning $1500). [Defendant] asked, "Are you straight?", to which Dessin replied, "I'm straight." [Defendant] got out of the car and walked out of the parking lot.

*Thompson v. United States*, 279 F.3d 1043, 1046 (D.C. Cir.) (internal citations omitted), *cert.*

*denied*, 537 U.S. 904 (2002).

Defendant was charged with one count of unlawful distribution of 50 grams or more of cocaine base in violation of 18 U.S.C. § 841(a)(1), (b)(1)(A)(iii). Although his co-defendant entered a guilty plea, Defendant proceeded to trial. A jury found Defendant guilty, and on November 14, 2000, the Court imposed a sentence of 188 months' imprisonment to be followed by a term of supervised release of 4 years. The District of Columbia Circuit affirmed the conviction and sentence on direct appeal. *See Thompson v. United States*, 279 F.3d at 1046.

The Court recently granted Defendant's Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2), and has reduced the sentence to 151 months' imprisonment with credit for time served.

## II.  DISCUSSION

### A.  Ineffective Assistance of Counsel

"The person seeking to vacate his sentence shoulders the burden of sustaining his

contentions by a preponderance of the evidence." *Thorpe v. United States*, 445 F. Supp. 2d 18, 21 (D.D.C. 2006) (citing *United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973)). The Court may deny a motion to vacate, set aside, or correct sentence without holding an evidentiary hearing when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The decision whether to hold a hearing is committed to the district court's discretion. *See Machibroda v. United States*, 368 U.S. 487, 495 (1962). Only where the motion raises "detailed and specific factual allegations whose resolution requires information outside of the record or the judge's personal knowledge or recollection must a hearing be held." *United States v. Pollard*, 959 F.2d 1011, 1030-31 (D.C. Cir. 1992).

Counsel must provide "reasonably effective assistance," and his performance is deficient if his "errors were so deficient as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A successful claim of ineffective assistance of counsel has two components. A defendant first "must show that counsel's performance was deficient," and second that "the deficient performance prejudiced the defense." *Id.* Scrutiny of counsel's performance is deferential; it is presumed that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692. To show prejudice, the defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *Strickland*'s two-part test also "applies to

challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

The analysis by which courts determine whether appellate counsel provided ineffective assistance is the same as that for trial counsel. *See Smith v. Robbins*, 528 U.S. 259, 289 (2000). A criminal defendant has no constitutional right to have appellate counsel raise every non-frivolous issue that the defendant requests. *Jones v. Barnes*, 463 U.S. 745, 754 n.7 (1983). "Whether such decisions by counsel amount to ineffective assistance depends on the reasonableness of the choices made as to the claims pursued and not pursued, but it is difficult in these circumstances to demonstrate that appellate counsel was incompetent." *United States v. Agramonte*, 366 F. Supp. 2d 83, 86 (D.D.C. 2005) (citing *Smith v. Robbins*, 528 U.S. at 288).

### B. Evidence of Defendant's State of Mind

The heart of the defense case was that Defendant did not know that the cup he delivered from Mr. Douglas to Det. Dessin contained crack cocaine. *See* United States' Opposition to Defendant's Motion to Vacate, Set Aside, or Correct Sentence ("Gov't Opp'n"), Oyewole Aff. ¶ 4. Defendant first argues that "trial counsel tried, unsuccessfully, to introduce evidence of [Defendant's] state of mind for the jury's consideration." Pet. at 2. Defendant argues that his inability to present testimony regarding his post-transaction conversation with Mr. Douglas prevented the jury from receiving evidence that "Mr. Douglas deceived the unwitting [Defendant] into transporting or delivering a controlled substance, and that Petitioner lacked the requisite <u>mens rea</u> to commit the charged crime." *Id.* at 4. Defendant states that he would have testified as follows:

4

> [Mr. Douglas] told [Defendant] that – he was really sorry for sending [Defendant]
> up there knowing that [Defendant] could get in trouble. When [Defendant] asked
> [Mr. Douglas] whom he thought [Defendant] could get in trouble transferring to
> w home he said he owed gambling debts, he came clean and told [Defendant] that
> he felt like a piece of crap, that it wasn't money in that cup as he'd told
> [Defendant]. Instead, it was cocain[e] base, and he didn't tell [Defendant] ahead
> of time because he felt that [Defendant] would not agree to transfer it if
> [Defendant] had know the true content[s] of [the cup]. He apologized over and
> over for deceiving [Defendant] as he did.

*Id.* at 3.

Defendant testified on direct examination that Mr. Douglas sent him on an errand "to take a cup full of money to a car." Gov't Opp'n, Ex. C (Tr. 8/30/2000) at 21:1. Defendant understood the cup to contain $2,600 in cash as payment for Mr. Douglas' gambling debt. *Id.* at 20:22-21:7. Defendant first saw the cup while he and Mr. Douglas were eating at Burger King; Mr. Douglas was drinking Sprite out of it before the transaction. *Id.* at 24:13-17. Defendant did not see Mr. Douglas put anything into the cup before giving the cup to Defendant, and Defendant neither looked into the cup himself nor observed Mr. Douglas put anything into the cup. *Id.* at 21:8-9, 24:20-22. According to Defendant, these facts tended to establish his lack of understanding of the transaction itself and his confusion at the purpose of exchanging a cup containing money for $1500 cash from Det. Dessin. *See id.* at 22:8-22. Had the jury heard this testimony, Defendant claimed that "the jury would have seen the case differently." Pet., Def.'s Aff. ¶ 3.

The Court concludes that any testimony about Defendant's conversation with Mr. Douglas was irrelevant. It is hearsay evidence pertaining to a post-transaction event, and Mr. Douglas' statements could not have had any effect on Defendant's state of mind at the time of the transaction itself. Trial counsel's so-called failure to alert the Court of the substance of

his proposed testimony is not prejudicial and evidences counsel's "strategic decision to emphasize points that showed that [Defendant] delivered the cup in question [but] did not intend to distribute a controlled substance." Oyewole Aff. ¶ 5.

### C.  Advice Regarding the Consequences of Proceeding To and  Testifying At Trial

Defendant's next arguments pertain to his decisions to reject the government's plea offer and to testify at trial. *See* Pet at 6-7, 11-12; *see generally* Mr. Thompson's Reply to Government's Opposition to Motion to Vacate Sentence ("Def.'s Reply").

The penalty for distribution of 50 grams or more of cocaine base is a term of not less than 10 years (120 months) or more than life imprisonment. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii).  The proposed plea agreement provided that the government would not oppose Defendant's "position at sentencing that [his] base offense level should be decreased by three levels based upon [his] acceptance of responsibility."[1]  Gov't Opp'n, Ex. F at 3.  Recognizing that Defendant may have sought downward departures for "the pre-arrest delay in indicting/arresting [him]; [] any rehabilitation [he] has undergone; and [] the minor/minimal role [he] had in the offense," *id.*, the government reserved its right to oppose each of these requests.  *Id.*  The proposed agreement further provided that the government would "not object to the Court sentencing at the low end of the Guideline range."  *Id.*

---

[1]      "If the defendant clearly demonstrates acceptance of responsibility for his offense," the offense level decreases by 2 levels.  U.S. Sentencing Guidelines Manual § 3E1.1  If the defendant's offense level is 16 or greater and has assisted authorities in the prosecution of his criminal conduct to the government's satisfaction either by "(1) timely providing complete information to the government concerning his own involvement in the offense; or (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently," the offense level is decreased  by 1 additional level.  *Id.*

For purposes of the United States Sentencing Guidelines, Defendant's base offense level was 32, his criminal history category was III, and the guideline range was 151 to 188 months. Def.'s Reply at 6. The jury did not credit Defendant's testimony, as evidenced by its guilty verdict.[2] The government requested "a two-point adjustment under 3C1.1 and that the Court find – and that's the obstruction of justice – and that the Court find by clear and convincing evidence that the defendant committed perjury during the trial." Gov't Opp'n, Ex. E (Tr. 11/12/2000) at 6:10-18.[3] The guideline range for an offender at offense level 34 and criminal history category III was 188-235 months. The Court granted the government's motion and imposed a sentence at the bottom of the range, 188 months. *Id.* at 7:8-12.

According to Defendant, had he accepted the plea offer and achieved a three-level reduction for acceptance of responsibility, his offense level would have been 29, and with the criminal history category unchanged, the guideline range would have been 108-135 months. Def.'s Reply at 6-7. Had the Court imposed a sentence at the bottom of this range, 108 months, Defendant would have faced "a sentence 80 months lower than the sentence ultimately meted out by Judge Jackson." *Id.* at 7.[4]

---

[2]    The Court noted that the defense presented was "entirely exculpatory" in that, "if the jury believes that [Defendant] did not know the contents of that cup, then it must acquit him." Gov't Opp'n, Ex. C (Tr. 8/30/2000) at 75:9-14.

[3]    If a defendant commits, suborns, or attempts to suborn perjury, the offense level increases by 2 levels. *See* U.S. Sentencing Guidelines Manual § 3C1.1 (1998) & Application Note 4.

[4]    Defendant further argued that the sentence he actually received was 118 months longer than that imposed on his co-defendant, Mr. Douglas, who entered a guilty plea instead of proceeding to trial. Reply at 7 & Supplement to Reply to Government's Opposition to Motion to Vacate Sentence, Attach. (Tr. 11/6/2000, United States v. Mitchell
(continued...)

Defendant attributes his decision to reject the government's plea offer to Mr. Oyewole's advice. According to Defendant, trial counsel "assured him he could not receive more than 120 months" incarceration if he were convicted. Pet. at 6; *see id.*, Def.'s Aff. ¶ 2. Initially Defendant stated that, "before [he] decided to take the witness stand, [he] made sure to inquire into the legal ramifications of it, [and] Mr. Oyewole assured [him] was not in the least risky." *Id.* ¶ 4. He allegedly was told that the worst result would be a conviction, and Mr. Oyewole "never advised [him] about the prospect of receiving any points enhancement in the likely event of the conviction he spoke about." *Id.* Had Defendant known of the possibility of an increase of offense level, he "would not have taken the added risk of testifying, to [the] risk of proceeding to trial." *Id.*

In his Reply, Defendant narrows his focus to the choice between accepting the government's plea offer and proceeding to a jury trial. Specifically, he alleges that counsel rendered ineffective assistance by failing to explain adequately "the impact of the United States Sentencing Guidelines on his decision to reject the Government's plea offer and . . . the two level enhancement he would receive for obstruction of justice following his testimony at trial and his conviction at the same trial."[5] Def.'s Reply at 1-2.

---

[4](...continued)
Douglas, Crim. No. 00-0016) at 5:18-22; Gov't Opp'n, Ex. A (Tr. 8/28/2000) at 6:13-21. Had the Court decreased Defendant's base offense level by three levels, a sentence at the low end of the new range still would have exceeded Mr. Douglas' sentence by 38 months.

[5]     Defendant was under the impression that he would have been eligible for an additional two-level decrease, to offense level 27, under the "safety valve" provision. Def.'s Reply, Def.'s Decl. ¶ 5. Had Defendant "known that [he] could have been sentenced to 87 [months'] incarceration, and at most 108 months, instead of risking a range of 188-235 months incarceration, [he] never would have rejected the government's plea offer." *Id.*

(continued...)

Under oath and in response to the Court's inquiries, Defendant declared that he understood the rights he forfeited by testifying at trial, Gov't Opp'n, Ex. C (Tr. 8/30/2000) at 16:25-17:7, understood that "false testimony could represent an additional offense of perjury and could constitute obstruction of justice," *id.* at 17:8-13, and that he "elected to testify[] after having been fully advised by Mr. Oyewole." *Id.* at 16:14-16. The plea offer clearly stated that the distribution charge "carries a minimum term of imprisonment of ten years and a maximum term of life." Gov't Opp'n, Ex. F (June 5, 2000 letter to Mr. Oyewole) at 1. Counsel "explained that the applicable range was ten years to life imprisonment, Oyewole Aff. ¶ 7, and "advised [Defendant] that he could face perjury charges or risk a finding of obstruction of justice if he did not testify truthfully." *Id.* ¶ 6. Defendant had access to a hard copy of the proposed plea agreement. *See* Gov't Opp'n, Ex. E (Tr. 11/14/2000) at 3. According to defense counsel, "[a]t no time did [he] promise [Defendant] that he would receive a particular sentence or tell him that he would not receive more than 120 months imprisonment." Oyewole Aff. ¶ 7. Defendant, then, was on notice that the potential sentence could have exceeded 120 months if the jury were to convict him. Given the dearth of evidence in the record pertaining to "the alleged misinformation [Defendant] received from trial counsel about the maximum sentence he faced," appellate counsel deemed the record "too limited to adequately present such a claim to the District of Columbia Circuit." Kurland Aff. ¶ 5.

---

[5](...continued)
Defendant's counsel, however, represented that Defendant was not eligible for this reduction. Def.'s Reply at 6 n.2.

Although the government agreed not to oppose Defendant's request to decrease the base offense level upon his acceptance of responsibility and not to object to a sentence at the low end of the Guideline range, Gov't Opp'n, Ex. F at 3, there was no guarantee that the Court would have agreed to such a decrease. As the proposed plea agreement noted, "the sentence to be imposed [was] a matter solely within the discretion of the Court," and the Court was "not obligated to follow" any of the government's recommendations. *Id.* at 2.

### D.  Identity of the Controlled Substance as Crack Cocaine

Defendant's final argument warrants little discussion. He argues that both trial counsel and appellate counsel rendered ineffective assistance for failing to establish the identity of the controlled substance and its quantity and to have the Court instruct the jury accordingly. *See* Pet. at 7-10.

The jury was instructed that "cocaine base is a controlled substance" that it "must decide whether the material was cocaine base," and that it find "beyond a reasonable doubt that the defendant distributed a detectible or measurable amount of cocaine base." Gov't Opp'n, Ex. C (Tr. 8/30/2000) at 123:11-12, 17-18. The jury verdict form required a "finding with respect to the nature of the controlled substance and its quantity," assuming, of course, that it first found Defendant guilty of the offense charged. *Id.* at 128:12-15. The jury found Defendant guilty of distribution of a controlled substance, cocaine base, in a quantity of 50 or more grams. *Id.*, Ex. D (Tr. 8/31/2000) at 3:13-18.

Government witnesses offered testimony that the Burger King cup contained crack cocaine. *See* Gov't Opp'n, Ex. B (Tr. 8/29/2000) at 24:19-21, 25:9-10, 34:9-14, 88:24-89:10; Oyewole Aff. ¶ 5. In the face of this testimony, trial counsel "decided to highlight other

issues that supported our theory of the case," that is, that Defendant "believed the cup he delivered contained money, rather than drugs." Oyewole Aff. ¶ 5.

In appellate counsel's judgment, "it would not have been productive to claim on appeal that the United States failed to prove the identity of the controlled substance beyond a reasonable doubt" for two reasons. Gov't Opp'n, Kurland Aff. ¶ 6. First, the jury expressly found Defendant guilty of a measurable amount of cocaine base. *Id.* Second, there was "testimony from . . . law enforcement personnel and a chemist from the Drug Enforcement Administration[] that supported the jury's verdict as it related to the identity of the controlled substance." *Id.*

## III.   CONCLUSION

The Court concludes that Defendant shows neither deficient performance nor sufficient prejudice, and, therefore, that his ineffective assistance of counsel claims fail. Accordingly, the Court will deny Defendant's motions to vacate, set aside or correct sentence and for release pending a hearing. An Order consistent with this Memorandum Opinion is issued separately.

January 26, 2009

THOMAS F. HOGAN
United States District Judge